IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND


MICHELLE LYNN GENOVESE et al.  *
                               *
                               *
v.                             *
                               *    Civil Action No. WMN-13-217
HARFORD HEALTH AND FITNES      *
CLUB, INC. T/A                 *
THE ARENA CLUB et al.          *
                               *
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

                           **MEMORANDUM**

    Pending is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 14. The motion is fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Plaintiffs' federal claims, Counts I, II, and III, will be dismissed and the remaining claims remanded to the state court.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    Plaintiff Michelle Lynn Genovese was employed by Defendant Harford Health and Fitness Club, T/A The Arena Club (The Arena Club) from March 2010 to May 2011. Her last position at the Arena Club was that of Membership Representative and her supervisor was Defendant Kathy Wise, The Arena Club's Sales Manager. Although the Amended Complaint does not provide Plaintiff's age, her EEOC Charge attached to the Complaint, ECF

No. 2-2, indicates that she was forty-five years old when her employment was terminated.  Plaintiff was also pregnant at the time.

The critical incident related to this action took place on May 18, 2011, when Defendant Wise conducted a "contentious and hostile" meeting of the Sales Team.  When Plaintiff became upset and attempted to leave the meeting, she was told by Wise to sit down.  Plaintiff complied.  Plaintiff alleges, however, that another woman who was significantly younger than her and not pregnant was permitted to leave the meeting shortly before Plaintiff attempted to leave.  Plaintiff's employment was terminated later that day for purported insubordination.  Plaintiff suffered a miscarriage shortly thereafter, the cause of which she attributes to the emotional and physical stress caused by the May 18, 2011, meeting.

Plaintiff and her husband, James John Genovese,[1] proceeding pro se, originally filed this suit in the Circuit Court for Harford County, Maryland.  The Complaint named as Defendants: The Arena Club, Wise, two other Arena Club employees, and the attorney that represented The Arena Club in proceedings before the Equal Employment Opportunity Commission (EEOC).  Without specifically identifying the statutory or other bases for these

---

[1] For ease of reference, the Court will refer to Michele Genovese as Plaintiff, James Genovese simply as Mr. Genovese, and the two collectively as Plaintiffs.

2

claims, the Complaint included counts for "Hostile Work Environment" (Count 1), "Disparate Treatment" (Count 2), "Reasonable Accommodation" (Count 3) "Intentional Infliction of Emotional Distress" (Count 4) "Wrongful Termination" (Count 5) and several counts labeled simply "Fraud" (Counts 6-12).  ECF No. 2.  On the assumption that the Hostile Work Environment, Disparate Treatment, and Reasonable Accommodation claims were being asserted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII) and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621-34 (ADEA), Defendants removed the action to this Court, invoking this Court's federal question jurisdiction.  ECF No. 1.

Defendants then filed a motion to dismiss.  ECF No. 8.  In response to that motion and with the consent of Defendants' counsel, Plaintiffs filed an amended complaint.  ECF No. 13.  In this First Amended Complaint, Plaintiffs dropped the claims against the individual defendants, except for those against Wise, and the "Fraud" claims against all Defendants.  The First Amended Complaint added, however, a claim for "Loss of Consortium."  Defendants have moved to dismiss the First Amended Complaint in its entirety.

## II. LEGAL STANDARD

A claim must be dismissed if the allegations in the complaint do not include enough facts to render that claim to

3

relief "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.  To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  Ashcroft v. Iqbal, 556 U.S. 662, 678.

The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement."  Twombly, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 663.  Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief.  Id. at 664; see also Brockington v. Boykins, 637 F.3d 503, 505-06 (4th Cir. 2011).

**III. DISCUSSION**

For the three counts that potentially arise out of federal antidiscrimination statutes - the hostile environment, disparate treatment, and reasonable accommodation claims - the primary focus of the Court's inquiry is on Defendants' conduct, specifically, whether Defendants treated Plaintiff differently because of her pregnancy or age.  In focusing on Defendants' conduct instead of the alleged outcome of that conduct, the Court in no way intends to diminish the tragedy of Plaintiff's miscarriage.  While Defendants' conduct allegedly led to a very tragic outcome, the Court concludes that the First Amended Complaint fails to connect that conduct or outcome with any unlawful discriminatory intent.

**A. Hostile Environment Claim**

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of ... sex."  42 U.S.C. § 2000e-2(a)(1).  In amending Title VII, the Pregnancy Discrimination Act (PDA) provided that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by

5

pregnancy, childbirth, or related medical conditions." Id. § 2000e(k). Thus, to establish a hostile work environment claim based on pregnancy discrimination under Title VII, a plaintiff must show that the offending conduct was (1) unwelcome, (2) based on the individual's pregnant status, (3) sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive work environment, and (4) imputable to the employer. See Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (discussing a hostile environment claim based on gender discrimination); DeJarnette v. Corning, Inc., 133 F.3d 293, 297 (4th Cir. 1998) (holding that "a claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.").

Plaintiff faces a similar burden to state a hostile environment claim under the ADEA. The ADEA makes it unlawful to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a hostile environment claim under the ADEA, a plaintiff must adduce evidence that "(1) [s]he experienced unwelcome harassment; (2) the harassment was based on [her] age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive

6

atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006) (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

The First Amended Complaint contains no allegations that any negative comments or remarks were made relating in any way to Plaintiff's pregnancy or age. Instead, it appears that Wise, the alleged harasser, treated all of the members of the Sales Team in a similar manner. Plaintiffs assert that in the May 18, 2011, meeting, "Wise was brow beating and yelling at [Plaintiff] and other team members . . . [and,] as was her common practice, inappropriately and unnecessarily yelled at and dressed down Plaintiff [] and the rest of the Sales Team." ECF No. 13 ¶ 5 (emphasis added). Plaintiffs allege that at an earlier meeting, Wise "began to brow beat the team" and "continued to berate the Sales Team." Id. (emphasis added). In describing the anticipated testimony of another member of the sale team, Lorraine Kern, Plaintiffs proffered that Kern would testify "about [the May 18, 2011] incident as well as many others during which Defendant Wise displayed the very same type of hostile behavior to Plaintiff [] and the Sales Team." Id. (emphasis added).

Elsewhere in the First Amended Complaint, in the count for intentional infliction of emotional distress, Plaintiff does

7

allege that Plaintiff was "singled out" for termination. Id. ¶ 22. In that same paragraph, however, Plaintiff alleges that when she "tried to voice her concerns, she was threatened by Defendant Wise with termination by Defendant Wise's reference to a former sales team employee, 'Sadie' who was recently terminated for expressing concerns about Defendant Wise and her conduct." Id. There is no indication that "Sadie" was pregnant when she was terminated, nor does Plaintiff mention Sadie's age. Thus, it is clear from Plaintiffs' allegations that, if Plaintiff was singled out, it was because Wise believed Plaintiff was challenging her authority, not because of her age or the fact that she was pregnant. See id. ¶ 21 (alleging Plaintiff was "threaten[ed] with termination every time she offered feedback or dared to speak when Defendant Wise repeatedly lost control of herself").

It appears that even the non-pregnant, "significantly younger" sales team member who Plaintiffs allege allowed to leave the May 18, 2011, meeting, Jenn Burman, was subjected to a similar environment as Plaintiff. Plaintiffs aver that Burman "became emotionally distressed" and "was also substantially distressed by the environment" of the meeting. Id. at 6. According to Plaintiffs' own allegations, the harassment she suffered was directed at the entire sales team and there are no allegations that would support the conclusion that Plaintiff was

singled out for unequal treatment.  Furthermore, statements made in Plaintiffs' Opposition belie the conclusion that Plaintiff was singled out, even in the ability to leave the meeting.  Plaintiff states that after Burman left the meeting, "Defendant [Wise] then subjected the Plaintiff to further humiliation and abuse for a significant period of time before the Plaintiff, <u>and the others who remained</u>, were allowed to leave."  ECF No. 15 at 7 (emphasis added).

It would be plausible to conclude from the allegations in the First Amended Complaint, if those allegations were proven true, that Defendant Wise was a very difficult manager under which to work.  It might even be plausible to conclude that she was inflicting emotional distress on the members of her sales team.  It would not be plausible, however, to conclude that Wise's treatment of Plaintiff was in any way based upon Plaintiff's age or pregnancy.  The allegations throughout the First Amended Complaint support only the conclusion that Wise treated everyone on the sales team harshly.  According to Plaintiffs' own allegations, Wise terminated the employment of another employee, "Sadie," for the same kind of "insubordination" for which Plaintiff's employment was terminated, <u>i.e.</u>, expressing concerns or otherwise challenging Wise's conduct or decisions.  Accordingly, Plaintiff's hostile environment claim must be dismissed.

9

### B. Disparate Treatment

Plaintiff's disparate treatment claim fails for similar reasons. To establish a disparate treatment claim under Title VII, Plaintiff would need to show that: "(1) she is a member of a protected class under Title VII; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to those employees outside the protected class." Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011). Similarly, to establish a disparate treatment claim under the ADEA a plaintiff must allege: "(1) [s]he is at least 40; (2) adverse employment action; (3) satisfactory job performance; and (4) similarly-situated younger employees received more favorable treatment." Cepada v. Bd. Of Ed. Of Baltimore Co., 814 F. Supp. 2d 500, 513 (D. Md. 2011). That she was "similarly situated" to the favorably treated employee requires a showing of "similar[ity] in all relevant respects." Haywood v. Locke, 387 Fed. Appx. 355, 359 (4th Cir. 2010). This includes engaging in conduct of comparable culpability or seriousness. See id.

Plaintiff supports her disparate treatment claims solely on the basis that a younger, non-pregnant team member, Jenn Burman, was permitted to leave the May 18, 2011, meeting and was not terminated for doing so. The Court concludes, however, that the

10

allegations in the First Amended Complaint do not establish that Burman and Plaintiff were similarly situated. It is apparent from Plaintiffs' allegations that there was a history of disagreement and tension between Plaintiff and Defendant Wise. After describing an incident that occurred prior to May 18, 2011, where Plaintiff attempted to leave another sales meeting and Wise shouted at her to stay in the meeting or be fired, Plaintiff alleges there were "many other" similar incidents. ECF No. 13 ¶ 5. No similar history is alleged related to Burman. In fact, it appears from the EEOC Decision which Plaintiff attached to her Complaint, that Burman was a new employee. ECF No. 2-3 at 1.[2]

Because Plaintiff has not identified a similarly situated individual outside the protected classes that was treated differently, her disparate treatment claim must be dismissed.

### C. Reasonable Accommodation

In her "Reasonable Accommodation" claim, Plaintiff asserts that she was "denied the reasonable accommodation of leaving the meeting when she became emotionally distressed and feared for the health and safety of herself and her unborn child." ECF No.

---

[2] In the Findings of Fact, the Hearing Examiner reported that the issue being discussed in the May 18, 2011, meeting was that the sales team was not making this new employee feel welcomed. Id. That the teams' treatment of Burman was the topic of discussion would explain why Burman was permitted to leave the meeting.

13 ¶ 16.[3]  She also states that she "had already made a request for reasonable accommodation on at least 4 other occasions" by asking for a transfer to another department of the Arena Club so she would not be under the supervision of Defendant Wise.  Id.

There are several shortcomings with this claim.  First, it is not clear that Plaintiff exhausted her administrative remedies as to this claim.  Her EEOC Charge, ECF No. 2-2, does not mention the denial of an accommodation and the "disability" box was not checked.  To the extent this claim is premised on Defendants' refusal to transfer Plaintiff to another department, there is no reference, whatsoever, in the Charge to her having made those requests.

It is also not clear that Plaintiff communicated to Wise that her desire to leave the contentious meeting was related to her pregnancy.  She mentions in the First Amended Complaint that the exigent circumstances of the May 18, 2011, meeting prevented her from making a written request for an accommodation, but she does not allege that she verbally connected her desire to leave the meeting with her pregnancy.  It appears that she tried to

---

[3] It is not apparent from the First Amended Complaint whether Plaintiff's "Reasonable Accommodation" claim is brought pursuant to Title VII, as amended by the PDA, or pursuant to the Americans with Disability Act, 42 U.S.C. § 12101 et seq. (ADA). Plaintiff's EEOC Charge makes no reference to the ADA. Regardless, Plaintiff cannot state a claim under the ADA.  "With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA."  Wenzlaff v. NationsBank, 940 F. Supp. 889, 890 (D. Md. 1996).

leave the meeting, Wise told her she could not, and Plaintiff sat back down in silence for the rest of the meeting.

The most significant shortcoming with this claim, however, is that, with the exception of Burman, all the other members of the sale team were required to sit through the same contentious meeting. The PDA "does not impose an affirmative obligation on employers to grant preferential treatment to pregnant women." Urbano v. Continental Airlines, Inc., 138 F.3d 204 (5th Cir. 1998). As one court remarked in language that might be particularly suited to this case, under the PDA "[e]mployers can treat pregnant women as badly as they treat similarly affected but non-pregnant employees." Troupe v. May Dep't Stores Co., 20 F.3d 734, 738 (7th Cir. 1994). If Plaintiffs' allegations are true, that is all that occurred at The Arena Club. Accordingly, this claim must be dismissed as well.

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss Counts 1 through 3, the only counts in the First Amended Complaint that assert federal claims. Where "the district court has dismissed all claims over which it has original jurisdiction," it has discretion to remand a removed case to state court. 28 U.S.C. § 1367(c)(3). Because this case is at a "relatively early stage," and this Court has not expended such a substantial "amount of time and energy" that it is more efficient to exercise

jurisdiction, Shanaghan v. Cahill, 58 F.3d 106, 112 (4th Cir. 1995), the Court will remand the case to the Circuit Court for Harford County without reaching the merits of the state claims. A separate order will issue.

                                      _____/s/_____
                                      William M. Nickerson
                                      Senior United States District Judge

DATED: May 29, 2013